

**FILED**
**Mar 25, 2021**
**01:49 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT CHATTANOOGA

| | | |
|---|---|---|
| Edward Rice, | ) | Docket No.: 2020-01-0637 |
| Employee, | ) | |
| v. | ) | |
| Hospice Source, LLC, | ) | State File No.: 59994-2020 |
| Employer, | ) | |
| And | ) | |
| Granite State Insurance Company, | ) | Judge Thomas Wyatt |
| Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER AWARDING BENEFITS

On March 18, 2021, the Court held an Expedited Hearing in which Edward Rice sought medical and temporary disability benefits. The primary issue was whether Mr. Rice gave his employer, Hospice Source, LLC, timely notice of his injury. Mr. Rice claimed he gave verbal notice of his injury to his supervisor on the date the injury occurred and, by text message, four days later. The supervisor claimed Mr. Rice only told him his back hurt and did not communicate a work injury until the statutory time period for providing notice had expired.

For the reasons below, the Court holds Mr. Rice would likely prevail at a Compensation Hearing in proving that he provided Hospice Source timely notice of his injury. Further, the Court awards medical and temporary disability benefits to Mr. Rice.

### History of Claim

Hospice Source employed Mr. Rice to deliver medical equipment to patients' homes and medical facilities. He loaded and unloaded the equipment and frequently lifted items weighing between fifty to 100 pounds.

Mr. Rice injured his back on February 6, 2020, while lifting a bed at Hospice Source's warehouse. He immediately told his co-worker, John "Jay" Beard, that he hurt his back and then walked to the office of his supervisor, Mario Giacomozzi. He testified

1

that he told Mr. Giacomozzi he hurt his back lifting a bed, and Mr. Giacomozzi modified his work duties by allowing him to deliver Mr. Beard's lighter load. Further, he asserted that Mr. Giacomozzi told him to go to Physicians Care, a walk-in clinic, for treatment.

Mr. Rice did not arrive at Physicians Care before its closing time because he first delivered his load. In fact, Mr. Rice did not go to Physicians Care until February 9 because he continued to work. On February 9, a provider at Physicians Care noted Mr. Rice's history as follows: "Back injury[.] Pt. states he has pain in lower back and down bilateral legs, present for 4 days. . . . [H]as been lifting heavy things at work." The provider diagnosed "lumbago with sciatica," administered an injection, and prescribed medication. The provider also instructed Mr. Rice to see a physician at Sports Medicine, an orthopedic clinic, if his pain continued, and he imposed work restrictions.[1]

After leaving Physicians Care on February 9, Mr. Rice texted Mr. Giacomozzi as follows: "Hey I have three L discs in my back that's meesed (sic) up." Mr. Giacomozzi responded, "Take a pic of the doctors not[e] and send it to me Ed. We need to not hurt you ok." In addition to the text message, Mr. Rice testified he called Hospice Source's human resources representative in late February and left a voicemail telling her he hurt his back lifting a bed at work. He stated she never called him back.

Mr. Giacomozzi admitted receiving the February 9 text but claimed Mr. Rice only told him his back was hurting and "that was about it." He maintained that he asked Mr. Rice on several occasions after February 9 whether he hurt his back on the job, and Mr. Rice stated he did not. However, Mr. Giacomozzi also testified that Mr. Rice told him he had degenerative back problems and his back hurt when he lifted heavy items at work. On cross-examination, Mr. Giacomozzi conceded that, at his deposition taken two days before trial, he testified he could not recall if Mr. Rice told him his back injury was work-related.

Mr. Rice's co-worker, Mr. Beard, testified that, on February 6, Mr. Rice told him he hurt his back lifting a bariatric bed. Mr. Rice had a grimace on his face when he said this. Mr. Beard then testified that Mr. Rice began walking in the direction of Mr. Giacomozzi's office after saying that he had to report his injury. Mr. Beard did not hear the conversation between Mr. Rice and Mr. Giacomozzi, but Mr. Rice later told him he reported to Mr. Giacomozzi that his back injury occurred on the job. He did not remember swapping loads with Mr. Rice on the date of injury, but he stated he did deliver the heavier loads while Mr. Rice was on light duty.

On cross-examination, Mr. Beard stated that he no longer works at Hospice Source and had taken another job. He denied that he left Hospice Source on bad terms and stated that he just tired of working there. Hospice Source offered no evidence to the contrary.

---

[1] Mr. Rice paid the Physicians Care bill of $361.56.

Returning to Mr. Rice's testimony, he stated that he worked for several weeks under the restrictions placed by Physicians Care. When his back symptoms worsened, he saw a physician at Sports Medicine, Dr. Candace McKee, on April 29. Dr. McKee noted that his back pain "initially started after [he was] pulling up/moving a bariatric bed at work." She ordered an MRI that revealed L4-5/L5-S1 spinal stenosis with nerve root compression. Dr. McKee referred Mr. Rice to a spine specialist at Sports Medicine and took him off work until that appointment. Mr. Rice provided Mr. Giacomozzi with documentation of his visits to Dr. McKee and of the off-work restriction.

On May 15, Mr. Giacomozzi informed Hospice Source's human resources representative that Dr. McKee had taken Mr. Rice off work. The representative asked whether the injury was work-related, and Mr. Giacomozzi replied by email: "Ed isn't saying its [sic] work-related but has just got worse over time and [he] still wants to work for us[.]" A few days later, the representative again asked whether Mr. Rice had been hurt on the job, and Mr. Giacomozzi again responded that Mr. Rice's injury was not work-related.

Mr. Rice saw spine specialist Dr. Alex Sielatycki at Sports Medicine on May 19. Dr. Sielatycki's report noted a January 2020 onset of back pain but described no mechanism of injury. The doctor restricted him to no bending, no lifting more than ten pounds, and no shifts longer than eight hours.[2] Mr. Rice tried working under these restrictions but could not continue due to worsening spinal symptoms.

On June 3, he telephoned Hospice Source's human resources representative to check why he had not heard about his workers' compensation claim. This conversation caused her to send certain forms, including an incident report and a First Report of Injury, for Mr. Rice's completion. Mr. Rice returned the forms on June 6 and described his injury on an incident report as follows: "I was putting a bed on the van and pulled something in my lower back." He described the injury similarly in the First Report and wrote that he gave notice of the injury on February 6.

Hospice Source accepted the claim after receiving the forms and provided Mr. Rice a physician-selection form, from which he selected Dr. Sielatycki as the treating physician. Hospice Source asked Dr. Sielatycki for his diagnosis, treatment recommendations, and causation opinion.

Dr. Sielatycki completed the forms on June 26 when he next saw Mr. Rice. The doctor wrote in his notes that he saw Mr. Rice on this date to perform a workers' compensation assessment. He also noted that Mr. Rice gave a history of experiencing back pain at work while lifting a bed in February 2020 and sought care for back pain shortly

---

[2] Mr. Rice initially paid for the injection himself but later received reimbursement after another source paid for it. He testified he did not know the source of the payment that prompted the reimbursement.

3

afterward. In consideration of that history, Dr. Sielatycki wrote, "I believe that his condition and need for treatment is at least 51% related to the incident from 02/2020." He responded almost identically in the form Hospice Source sent him.

Dr. Sielatycki recommended surgery in the June 26 note, and in a separate form he signed that same day, he took Mr. Rice "off work now until post-op." In July, Hospice Source began paying temporary disability benefits at the agreed weekly rate of $630.78. Dr. Sielatycki continued Mr. Rice off work in his August 18 notes.

Hospice Source submitted Dr. Sielatycki's surgery recommendation to utilization review, which declined to certify the surgery. Then, in August, Hospice Source denied Mr. Rice's case for alleged lack of notice. It ceased paying temporary disability benefits, and although utilization review eventually certified the surgery, it has not authorized the recommended surgery. Mr. Rice testified he has not worked since June 26, 2020.

During the hearing, Hospice Source sought to show that Mr. Rice's actions during the first four months following his back injury were contrary to those of an employee who had given his employer timely notice of a work injury. Mr. Rice described a 2017 work-related leg injury that he reported to Hospice Source. He stated that he did not personally pay medical bills, and he never took work excuses to Mr. Giacomozzi, on that claim. He explained that he did not need to take excuses to work because the medical offices took care of that. He explained that he paid some bills on the back injury because the providers required that he do so after taking his information.

**Findings of Fact and Conclusions of Law**

The threshold issue is whether Mr. Rice gave timely notice of his injury. He bears the burden of proof. *See generally* Tenn. Code Ann. § 50-6-239(c)(6) (2020). At this expedited hearing, he must show he would likely prevail at a hearing on the merits that he provided timely notice. Tenn. Code Ann. § 50-6-239(d)(1).

*Notice*

Tennessee Code Annotated section 50-6-201 requires written notice of an injury unless the employer has actual notice of it. Tenn. Code Ann. § 50-6-201(a)(1). An employee must provide the employer notice within "fifteen (15) days after the occurrence of the accident, unless reasonable excuse for failure to give notice is given to the satisfaction of the tribunal to which the claim for compensation may be presented." Further, "[n]o defect or inaccuracy in the notice shall be a bar to compensation, unless the employer can show . . . that the employer was prejudiced by the failure to give notice, and then only to the extent of the prejudice."

4

For several reasons, the Court holds that Mr. Rice will likely prevail at a Compensation Hearing in proving that, on the date of injury, he gave Mr. Giacomozzi verbal notice that he injured his back at work.

First, the Court places importance on the credible testimony of Mr. Beard that, on the date of injury, Mr. Rice told him he hurt his back lifting a bed and then walked in the direction of Mr. Giacomozzi's office saying he would report the injury. Mr. Beard testified confidently and matter-of-factly, and nothing in his demeanor indicated he favored either party in testifying. He calmly denied Hospice Source's attempt to cast him as a disgruntled ex-employee, and Hospice Source introduced no evidence to support that allegation.

Second, the Court considers it significant that the provider who treated Mr. Rice for back pain four days after the injury noted a history that he lifted heavy items at work. Further, Mr. Rice saw Dr. McKee before he knew Hospice Source would deny his claim, and she noted that Mr. Rice gave a history of having injured his back while lifting a bed at work. Mr. Rice gave the same history in early June when Hospice Source sent him forms to complete, and he gave Dr. Sielatycki the same history on June 26, again before Hospice Source denied his claim. The Court holds that the above evidence supports Mr. Rice's testimony that he told Mr. Giacomozzi on the date of injury that he hurt his back lifting a bed at work.

Third, the Court gives limited weight to Mr. Giacomozzi's testimony that Mr. Rice did not report the injury on the date it occurred. This testimony is coupled with Mr. Giacomozzi's admission during his deposition that he did not recall whether Mr. Rice told him he hurt his back at work. Additionally, the Court finds that Mr. Giacamozzi's testimony that Mr. Rice did not timely report his work injury is mitigated by his testimony that Mr. Rice told him the lifting he performed at Hospice Source caused him to suffer back pain.

Finally, the Court finds little merit in Hospice Source's argument that Mr. Rice's payment of medical bills and his taking of work-restriction notes to Mr. Giacomozzi ran contrary to his testimony that he reported a work injury on the day it occurred. The Court holds that conduct is, at least, equally consistent with Mr. Rice's commitment to meet his financial obligations and continue working despite back pain.

*Medical Benefits*

Having found Mr. Rice would likely prevail on the issue of notice, the Court turns to his requests for medical and temporary disability benefits.

The Workers' Compensation Law imposes dual obligations on the employee and employer in connection with treatment of a work injury. The employee must give timely

5

notice and, if he does so, the employer must provide a panel of physicians from which the employee selects a treating physician. *See generally* Tenn. Code Ann. § 50-6-204.

Here, Hospice Source provided Mr. Rice a panel of physicians from which he chose Dr. Sielatycki as the treating physician. Hospice Source honored the selection by authorizing Dr. Sielatycki to treat Mr. Rice and twice submitted Dr. Sielatycki's surgery recommendation to utilization review. Finally, Hospice Source did not present evidence rebutting Dr. Sielatycki's opinion that Mr. Rice's back pain and the need for treatment arose primarily out of and in the course and scope of employment. Based on the above, the Court holds that Mr. Rice will likely prevail at a Compensation Hearing in showing that Hospice Source is liable for the treatment, including surgery, recommended by Dr. Sielatycki.

Hospice Source shall promptly schedule Mr. Rice to see Dr. Sielatycki to determine his current recommendation regarding surgery. Should Dr. Sielatycki continue to recommend surgery, Hospice Source shall promptly authorize it and all attendant medical services.

*Temporary Disability Benefits*

The Supreme Court has long held that temporary total disability benefits cover the healing period following a work injury during which the employee is totally disabled from working. *See Roberson v. Loretto Casket,* 722 S.W.2d 380, 383 (Tenn.1986). The essential elements an employee must prove to obtain temporary total disability benefits are total disability from working that is causally connected to a compensable work injury and the duration of the period of total disability. *Id*. Temporary total disability benefits cease when the employee returns to work or on the date the employee attains maximum medical improvement from the injury. *Simpson v. Satterfield,* 564 S.W.2d 553, 555 (Tenn. 1978).

Here, the Court notes that, in his June 26, 2020 note, Dr. Sielatycki took Mr. Rice off work "now until post op." Mr. Rice testified he has not worked since June 26 due to the disability caused by his work-related back injury. Hospice Source did not present evidence that Dr. Sielatycki has returned Mr. Rice to work, nor did they rebut Mr. Rice's testimony that he has not worked since June 26 due to back pain from his work injury.

Thus, the Court holds that Mr. Rice will likely prevail at a Compensation Hearing in proving his entitlement to temporary total disability benefits in the amount of $630.78 per week, from when Hospice Source ceased paying benefits in August 2020 until the present. Mr. Rice's entitlement to temporary total disability benefits will continue until the earlier of when Dr. Sielatycki assigns maximum medical improvement or the date he returns Mr. Rice to work.

6

**IT IS ORDERED** as follows:

1. Hospice Source shall pay for all reasonable and necessary treatment of Mr. Rice's back injury by Dr. Sielatycki, including surgery and attendant medical services. Hospice Source shall promptly schedule an appointment with Dr. Sielatycki for consideration of the doctor's current recommendation regarding surgery.

2. Hospice Source shall pay Mr. Rice temporary total disability benefits in the amount of $630.78 per week from the date of the last payment of benefits until the present. Hospice Source shall continue to pay Mr. Rice temporary total disability benefits until Dr. Sielatycki either releases him to return to work or assigns maximum medical improvement from his back injury.

3. This case is set for a Status Hearing on **July 15, 2021, at 10:00 a.m.** Eastern Time. You must call (615) 741-3061 or toll-free at (855) 747-1721 to participate in the Status Hearing. You must call on the scheduled date and time to participate. Failure to call may result in a determination of the issues without your further participation.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED March 25, 2021.**


*Thomas Wyatt*

_____
**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

**APPENDIX**

<u>Exhibits:</u>

A. Employee's Exhibits
1. Choice of Physician form
2. Injury report of Mr. Rice
3. First Report of Injury
4. Medical authorization
5. Drug Test Reports
6. Same as number 5
7. Choice of Physician form
8. Email of May 20, 2020 from Mr. Giacomozzi to HR
9. Emails of May 15 from Mr. Giacomozzi to HR
10. Emails of May 19 from Mr. Giacomozzi to HR
11. Physicians Care records
12. Bill from Physicians Care
13. Records of Dr. Alex Sielatycki
14. Records of Dr. Candace McKee
15. Dr. Sielatycki's responses to carrier's questions
16. Records of Dr. Shay Richardson-2019 injury
17. Records of Nova Medical Center-2019 injury
18. Same as number 17
19. Final Medical Report-2019 injury
20. Text messages between Mr. Rice and Mr. Giacomozzi

B. Employer's Exhibits
1. Same as Employee's number 1
2. Same as Employee's number 2
3. Occurrence report of Mr. Rice
4. Same as Employee's number 3
5. Same as Employee's number 4
6. Records of Dr. Robert Mynatt
7. Drug test report
8. Leave of absence records with medical documentation
9. Acknowledgment of Policy and Procedure Manual
10. Carrier investigation forms
11. Medical records (mostly duplicates of those submitted by Employee)
12. Records of Nova Medical Center

C. Affidavit of Edward Rice

Technical Record:

1. Petition for Benefit Determination and supplement
2. Dispute Certification Notice and supplements
3. Employee Position Statement
4. Request for Expedited Hearing
5. Employer Expedited Hearing Statement

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on March 25, 2021.

| Name | Certified Mail | Email | Service sent to: |
|---|---|---|---|
| Michael Newton Employee's Attorney | | X | mnewton@thenewtonfirm.com |
| Amy Brown Employer's Attorney | | X | Amy.brown@petersonwhite.com Kim.capshaw@petersonwhite.com |

**Penny Shrum, Court Clerk**
Wc.courtclerk@tn.gov



Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the
Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-
stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____

*[Signature of appellant or attorney for appellant]*